UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MARIE MARCEL REED, (PRO SE)

VERSUS

MIKE EDWARDS, OFFICER OF THE
BATON ROUGE POLICE DEPARTMENT,
ET AL

CIVIL ACTION

NUMBER 12-558-JJB-SCR

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, October 3, 2012.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MARIE MARCEL REED, (PRO SE)

VERSUS

MIKE EDWARDS, OFFICER OF THE
BATON ROUGE POLICE DEPARTMENT,
ET AL

CIVIL ACTION

NUMBER 12-558-JJB-SCR

## MAGISTRATE JUDGE'S REPORT

Plaintiff Marie Marcel Reed filed a previous civil action against numerous defendants alleging various claims under both federal and state law. *Marie Reed v. Mike Edwards*, et al, CV 11-30-F (M.D.La. 2012). Her complaint was dismissed with prejudice after the district court determined that all of her claims were prescribed. In a 16 page Order and Reasons the district judge summarized the background for her claims and explained why all of them were untimely filed.[1] Rather than restate all of this information again, the Order and Reasons are attached hereto as Appendix 1.

Plaintiff appealed the dismissal. On August 27, 2012, the Fifth Circuit Court of Appeals affirmed the dismissal, agreeing that her claims were prescribed. Again, rather than repeat the appellate court's reasoning its decision is attached as Appendix 2.

---

[1] The district court declined to exercise supplemental jurisdiction over any state law claims. These were dismissed without prejudice.

In its decision the appellate court also addressed her request that she be permitted to amend her complaint, specifically noting that she "never asked the district court for leave to amend or sought to raise a due process claim during the more than one year that suit was pending." The appellate court also considered whether a miscarriage of justice would occur if leave to amend was denied. The court concluded that she "presented only conclusional allegations that her arrest was concocted through a conspiracy, so no miscarriage of justice would result from following our general rule and refusing to hear her new claim." Accordingly, the appellate court rejected the plaintiff's request to amend her complaint.

Undeterred by the appellate court's decision, two weeks later the plaintiff filed this civil action. Plaintiff's complaint is more of a memorandum with numerous exhibits than a complaint as envisioned by Rules 8 and 10, Fed.R.Civ.P.[2] There is no clear identification of the defendants nor a clear statement of the claims being asserted and against whom the plaintiff is asserting them. There is no prayer for relief, which would indicate what the plaintiff is asking the court to do. Nonetheless, a review of all the materials submitted by the plaintiff clearly shows that at least some of the exhibits relate to the claims the plaintiff brought, or sought to bring, in CV 11-30. Also, the title of the

---

[2] See also record document numbers 1-2 and 1-3, comprising more than 200 pages.

complaint is "~~Plaintiff's Motion for Leave to File~~ Amended Complaint," with the strikeout in the original and with the prior civil action number. This clearly indicates there is at least some relation to CV 11-30. Plaintiff also filed a separate document titled "Plaintiff's Motion for Leave to File Amended Complaint," without the strikeout but with "No. 3:11-CV-30" crossed out.[3] However, the text of the document is identical to the text of the first three pages of her complaint. Consequently, the motion for leave provides no useful information either.

Plaintiff sought and was granted leave to proceed in forma pauperis[4] and was ordered to file an amended complaint which complies with Rules 8(a) and (d) as well as Rule 10, Fed.R.Civ.P.[5] In response to the order, the plaintiff filed both a lengthy First Amended Complaint, a Second Amended Complaint seeking injunctive relief, and additional exhibits.[6]

The amended complaints allege claims which are merely repackaged claims from CV 11-30, which the plaintiff obviously still desires to litigate despite the previous dismissal of her

---

[3] Record document number 3.

[4] Record document number 2, motion, and 4, order. See 28 U.S.C. § 1915.

[5] Record document number 6.

[6] Record document numbers 7, 8 and 9, respectively. The undersigned is included among the 22 defendants in the 47-page (including exhibits) First Amended Complaint.

federal law claims with prejudice.[7]  With no new material factual allegations, the plaintiff's amended complaints obviously suffer from the same fatal defect as her previous complaint – the claims are prescribed.

Moreover, the claims brought against the defendants in her previous suit are now barred by res judicata and cannot be raised in a new complaint.  Federal law determines the res judicata effect of a prior federal court judgment.  *Meza v. General Battery Corporation*, 908 F.2d 1262 (5th Cir. 1990); *Kurzweg v. Marple*, 841 F.2d 635, 639 (5th Cir. 1988); *Robinson v. National Cash Register Company*, 808 F.2d 1119, 1124 (5th Cir. 1987); *Sidag Aktiengesellschaft v. Smoked Foods Products Company*, 776 F.2d 1270, 1273 (5th Cir. 1985).  Four requirements must be met in order to apply res judicata: (1) the parties must be identical in both suits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both cases.  *Meza, supra; Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 188 (5th Cir. 1990).  As to the defendants in CV 11-30 who are again named as defendants in this case, the plaintiff's claims against them are barred by res judicata.

Under 28 U.S.C. § 1915(e)(2)(B) the court may dismiss an in forma pauperis complaint when it is found to be frivolous,

---

[7] Plaintiff's First Amended Complaint repeatedly refers to the district court not granting her leave to amend her complaint, even though she did not seek to do so in her previous case.

malicious or fails to state a claim upon which relief may be granted. A complaint is legally frivolous when (1) the complaint has no realistic chance of ultimate success; or (2) it has no arguable merit in terms of the arguable substance of the claims presented, both in law and in fact; or (3) beyond doubt, the plaintiff can prove no set of facts in support of her claims which would entitle him to relief. *See*, *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986). When evaluating a complaint for the purpose of § 1915, the court may, sua sponte, recognize affirmative defenses that are apparent from the record even where they have not been addressed or raised by the parties. *Ketzel v. Barnett*, 263 F.3d 163 (5th Cir. 2001); *Ali v. Higgs*, 892 F.2d 438 (5th Cir. 1990).

A civil action may be dismissed as malicious if it duplicates claims raised by the same plaintiff in previous litigation. *Pittman v. Moore*, 980 F.2d 994, 994-95 (5th Cir. 1993).

Plaintiff's new complaint, as amended, is both frivolous and malicious. It is apparent that the plaintiff is unwilling to accept the determination of four federal court judges that her federal law claims against defendants Sid Gautreaux, Brian Blache, Chastity Sanford, James M. LeBlanc, Heath Soileau, Michael Edwards and Charles Mondrick were time-barred when she brought them in CV 11-30. They are still time-barred, and they are now also barred by res judicata. Consequently, her refiling of those claims is both frivolous and malicious.

As to the new defendants named in this case - namely the defendants' attorneys, the defendants' employers, and the undesigned - her claims are frivolous. As to the attorneys, they are not state actors who can be sued under 42 U.S.C. § 1983. An attorney, whether retained or appointed in any proceeding, owes his only duty to his client and not to the public or the state. *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445 (1981). Because a private attorney's role is independent from the role of the state, any attorney's conduct, by mere representation of his client, is not chargeable to the state. *Hill v. McClellan*, 490 F.2d 859 (5th Cir. 1974). A private retained attorney does not act under color of state law and cannot be held liable under the Civil Rights Act in the absence of an actionable conspiracy. *Slavin v. Curry*, 574 F.2d 1256 (5th Cir. 1978). Plaintiff has not alleged any facts which could support a claim that the attorney defendant conspired with any state official to deprive her of her rights. Merely making vague and conclusory allegations that the defendants conspired against her is insufficient. It has been long established that more than a blanket of accusation is necessary to support a § 1983 claim. *Tower v. Glover*, 467 U.S. 914, 104 S.Ct. 2820 (1984); *Lynch v. Cannatella*, 810 F.2d 1362 (5th Cir. 1987).

As to the claims against the defendants' employers and/or offices,[8] because she has no viable claims against any of the

---

[8] These are the Baton Rouge Police Department, the East Baton Rouge Sheriff's Office, the Louisiana Department of Corrections and (continued...)

individual defendants for violation of her constitutional rights, their employers/offices cannot be liable to her either.

As to the undersigned, none of the plaintiff's complaints (the original "Amended Complaint," the First Amended Complaint, and the Second Amended Complaint) contain any factual allegations which could even arguably support a federal claim.

Moreover, a claim against the undesigned based on an order or ruling issued in this case would be barred by judicial immunity. Judicial immunity is a question of law which must be determined on the facts of each case. *Brewer v. Blackwell,* 692 F.2d 387, 390-391 (5th Cir. 1982). A judge is immune from suit for damages resulting from an act performed in his judicial role. The immunity shields the judge unless he acts in the clear absence of all jurisdiction over the subject matter, or in a non-judicial capacity. *Brewer v. Blackwell, supra*, at p. 396. *Ammons v. Baldwin*, 705 F.2d 1445, 1447 (5th Cir. 1983), *cert. denied*, 104 S.Ct. 999 (1984). The immunity applies however erroneous the act and however evil the motive. *Johnson v. Kegans*, 870 F.2d 992 (5th Cir. 1989) (citing cases).

The Fifth Circuit Court of Appeals established in *Brewer, supra*, a four-part test to determine whether an act is sufficiently judicial to warrant immunity. Applying that test here, it is clear that the undesigned would be shielded by judicial immunity.

_____

[8](...continued)
the East Baton Rouge Office of Probation and Parole.

Consequently, a claim based on the actions taken in this case by the undersigned would be frivolous.

## Conclusion

Because it is clear that the plaintiff's complaint, as amended, has no arguable basis in fact and in law, the complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(I), and without leave to amend because there is no conceivable, non-frivolous, non-malicious federal claim he could assert consistent with the facts alleged in his complaint.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the plaintiff's complaint be dismissed pursuant to § 1915(e)(2)(B)(I) as frivolous and malicious, and without leave to amend because there is no conceivable non-frivolous, non-malicious federal claim she could assert consistent with the facts alleged in her complaint, as amended.

Baton Rouge, Louisiana, October 3, 2012.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

CV 12-0558-JJB-SCR
APPENDIX 1

MARIE REED                                        CIVIL ACTION

v.                                                NO. 11-0030

MIKE EDWARDS, OFFICER OF THE                      SECTION "F"
BATON ROUGE POLICE DEPARTMENT, ET AL.

ORDER AND REASONS

    Before the Court are three motions: the defendants Sid
Gautreaux, Brian Blache, and Chasity Sanford's motion to dismiss
and, in the alternative, motion to stay; (2) the defendants James
M. LeBlanc and Heath Soileau's motion to dismiss; and (3) the
defendants Michael Edwards and Charles Mondrick's Rule 12(b)(6)
motion to dismiss on the basis of prescription.  For the reasons
that follow, the motions are GRANTED insofar as they seek to
dismiss the plaintiff's claims on the ground that they are time-
barred.  This Court declines to exercise supplemental jurisdiction
over any remaining state law claims.

Background

    This civil rights lawsuit arises out of one woman's numerous
claims that several law enforcement officers falsely arrested her,
falsely imprisoned her, and assaulted her.  The facts underlying
her complaint are summarized as follows.

    On October 31, 2003 Marie Reed pled guilty in state court in
Baton Rouge to one count of theft (over $500); 19 counts of issuing
worthless checks; 42 counts of forgery; three counts of theft by

1

fraud; five counts of theft (over $500) and two counts of theft (between $100-$500). She was sentenced to 10 years at hard labor, all sentences to run concurrently, with credit for time served, suspended; probation for five years, with restitution in the amount of $35,036.42, to be paid during the probation period.

Heath Soileau was Reed's probation officer. During the course of her probation, motions to revoke her probation were filed, and a warrant for her arrest was issued in October 2004. Once the 2004 warrant was lifted, Reed and Soileau somehow "came to an understanding as to how her probation would continue." Soileau sent a letter to the state court asking the court to continue Reed on probation.

However, on September 18, 2007 Soileau sent another letter to the court, accompanied by a motion to revoke Reed's probation because Reed was $22,562.50 delinquent in restitution payments.[1] The hearing to revoke her probation was scheduled for November 19, 2007. Reed failed to appear. An arrest warrant was issued.

During the fall of 2007 and the summer of 2008 Reed and Soileau began to communicate again, and she believed that they had "come to an understanding once again, and she was continuing to pay the restitution in anticipation of her probation ending in October of 2008." On July 28, 2008 Reed's attorney received an itemized

_____

[1]According to the allegations of the complaint, the implication of Soileau's September 18 letter was that Reed had paid $12,473.92 from the original amount of restitution.

2

list from the Office of Probation and Parole Collections showing outstanding restitution owed, which totaled $11,429.47 (Reed having apparently paid $11,133.03 from the amount due on September 18, 2007). Reed's probation ended on October 31, 2008, "having paid or attempted payment to all of the remaining victims, through the Office of Probation and Parole...."

Four months later, on February 28, 2009, Reed was stopped for an alleged traffic violation by Officer Michael Edwards of the Baton Rouge City Police. Officer Edwards examined Reed's driver's license and talked to her about the traffic violation and then told her that she was free to go. Reed drove away, forgetting to get her driver's license back from the officer. Later that night, Officer Edwards contacted Reed's mother, Linda Jenkins, at her home in an attempt to return Reed's license. Officer Edwards told Ms. Jenkins to call Reed and let him speak with her, which she did. Officer Edwards requested that Reed meet him late that night at a random parking lot he chose. Scared, Reed told him that she would like to speak with her lawyer before doing so. Reed charges that Officer Edwards became angry and threatened Reed when she refused to meet him.[2] Reed did not meet with Officer Edwards.

---

[2]According to the allegations of the complaint, Officer Edwards told Reed something to the effect of:

I am not going to hurt you.... You can speak to an attorney all you want, but if you don't come meet me tonight, you will be sorry. You do not want to mess with me, I am next to God, I have put lawyers, judges and Das in jail.... I will put you in jail if you do

3

About a week later, Detective Sergeant Brian J. Blache obtained an arrest warrant for Reed on theft charges related to her employment with a company named CTV and Associates. Reed charges that Detective Blache did so "at the request and/or encouragement of Officer Michael Edwards and in a conspiracy to violate [her] civil rights."

The saga continues.

On July 21, 2009 Reed was arrested by U.S. Marshals during a warrant round-up. At the time of her arrest there were three warrants outstanding on Reed:

(1) a Probation and Parole warrant from the 23rd Judicial District Court, related to Reed's probation (even though it had ended on October 31, 2008); Reed says the warrant had been held over solely because of the negligence of Probation and Parole Officer Heath Soileau;

(2) a warrant obtained by Officer Michael Edwards related to the February 28, 2009 traffic stop; and

(3) a warrant obtained by Detective Sergeant Brian J. Blache related to charges arising from a civil transaction related to Reed's employment with CTV and Associates.

Reed complains not only that the Probation Warrant was negligently held over as a result of Soileau's negligence, but also that the Traffic Warrant and the CTV Warrant were fraudulently obtained.

---

not meet me now.

4

Probation Warrant

Sometime between August 1, 2009 and August 15, 2009 Reed posted a bond with a surety in the amount of $35,000 to cover the charges related to the traffic stop and theft and to facilitate her release from the East Baton Rouge Parish Jail. She was then transported to the Ascension Parish Jail, where she was held pursuant to the Probation Warrant.

Reed alleges that she was wrongfully held over on the Probation Warrant as a result of Soileau's negligence; he did not attempt to serve the warrant, which was issued on November 19, 2007 when she failed to show up for her revocation hearing, and Soileau never informed her of the arrest warrant despite their continued communication in person and through her attorney throughout the spring, summer, and fall of 2008. During the many communications with Soileau, Reed had expressed a desire to complete all the requirements of her probation, knowing that it was coming to an end in October 2008. Hence Soileau's fault.

She alleges that Soileau allowed the probation hold to continue and adds that Soileau conspired with Officer Edwards when Soileau on July 23, 2009 filed a motion and order to revoke her probation. In the motion to revoke probation, Soileau does not assert any arrears in restitution but, rather, refers to the charges relating to the Traffic Warrant, the CTV Warrant, as well as a charge for issuing worthless checks. (Reed acknowledges

5

writing a bad check to her dentist and represents that "[t]his matter is being discharged in the 19th Judicial District Court.").

September 22, 2009 was the scheduled date for the revocation hearing. It did not happen. Reed's attorney appeared on her behalf and requested a continuance.[3] (Soileau was not present in court on September 22). That afternoon Reed appeared in court and was informed of the continuance; the hearing was continued until November 17, 2009, over her objection.

On November 17, 2009 Reed was present with new counsel, Maurice Hall, at which time the State requested a continuance because Soileau was not present. The court granted the continuance and reset the motion for January 19, 2010. On that date Reed was present in court with her attorney, but Soileau again was not present. The State again requested a continuance, which the court granted and reset the motion for March 15, 2010. However, this time, the court ordered that the probation hold be lifted and ordered Reed's release.

On March 15, 2010 new counsel for Reed, Jarrett Ambeau, enrolled at the probation revocation proceeding. But it didn't happen either. Soileau was present at the March 15 hearing. Ambeau, however, requested a continuance, which was granted; the hearing was reset for April 19, 2010. But after many more delays,

---

[3]Reed says that the attorney that appeared on her behalf had been fired before the hearing.

the hearing was reset for August 16, 2010, at which time it was finally held.[4]

During the August 16 hearing, says Reed, Soileau argued "vigorously, and with malice" that Reed's probation should be revoked and that she should be confined for her original 10 year sentence. According to Reed, the 23rd Judicial District Court issued its ruling on August 26, 2010, finding that "...Probation and Parole failed to satisfy [the] due process requirements of [Reed], and her probation was terminated."

## The Traffic Warrant

On June 7, 2010 the traffic charges from the February 28, 2009 stop by Officer Edwards were dismissed in their entirety, without a hearing and without presenting any evidence. Reed alleges that Officer Edwards himself dropped the charges "because he had been informed by...Soileau that the matters in the 23rd Judicial District Court were not going well, and that it appeared that the probation may not be held against [Reed]."

## CTV Warrant

On March 18, 2009 Detective Sergeant Brian J. Blache swore in an affidavit against Reed relating to her alleged fraud concerning CTV and Associates. In the affidavit, Detective Blache stated: (1)

---

[4]The hearing was reset three more times before a hearing was conducted and a ruling was made; Soileau was not present during the April 19 or May 17 settings but was present at the July 19, 2010 hearing, at which time Soileau requested one last continuance because he had forgotten his file.

7

Reed, as an employee of CTV, accepted an enrollment fee for services but did not in fact perform any services; (2) Reed accepted a check from a client without authorization and deposited the check in her personal account also without authorization from the company owner, Albert Wells; (3) Detective Blache learned from Wells that the business had closed in June 2008; (4) Reed accepted the check after the business had been closed.

But Wells also signed affidavits on April 2, 2009 and April 23, 2009, stating: (1) Reed was his supervisor; (2) Reed was authorized to accept payments from clients; (3) Wells did not at any time act to bring charges against Reed; and (4) CTV was open through September 2008.

Reed alleges that Detective Blache pursued charges against her even though he had information contradicting his affidavit. When Reed's counsel attempted to have the warrants withdrawn because they were untrue, Reed alleges, Detective Blache filed another affidavit on April 20, 2009, forming the basis of an obstruction of justice charge against Reed. Reed alleges that Detective Blache conspired with Officer Edwards to violate her constitutional rights when Blache contacted Wells (after February 28, 2009)[5] and tried to get him to press charges against Reed.

---

[5]On March 25, 2010, Reed alleges, that Wells submitted an affidavit in which he stated that Blache contacted him to pressure him into pressing charges against Reed.

8

## Alleged Assault -- Deputy Chasity Sanford

On November 26, 2009 Reed was temporarily housed at the East Baton Rouge Parish Jail because she had a court appearance scheduled in Baton Rouge.  That morning, Reed went to the morning medicine call and asked for her breathing treatment, which was previously ordered by her doctor.  The nurse refused her treatment. Deputy Chasity Sanford, who was present at the medicine call, placed the palm of her hand in front of Reed's face (indicating that the conversation was over and that she would not listen to Reed).  Reed turned to walk away and mumbled "you didn't have to put your hand in my face like that."  Reed alleges in her complaint that Deputy Sanford then grabbed Reed and slammed her to the ground.

According to Reed, Deputy Sergeant Minor, Sanford's supervisor, had to stop Sanford from kicking Reed while Reed was on the floor.  Reed was not examined by a nurse until much later that evening; she was eventually taken to the hospital around midnight and was diagnosed with bruised ribs.

## The Lawsuit

On January 18, 2011 Reed sued Brian Blache, Michael Edwards, Sid Gautreaux, James M. LeBlanc, Charles Mondrick, Chasity Sanford, and Heath Soileau in the U.S. District Court for the Middle District of Louisiana, alleging in a 45-page complaint various civil rights and state law violations, including:

(1) false arrest and false imprisonment pursuant to 42 U.S.C. § 1983, as to Officer Edwards and Charles Mondrick, interim chief of the Baton Rouge Police Department, in his official capacity;

(2) false arrest and false imprisonment pursuant to 42 U.S.C. § 1983 as to Heath Soileau, James M. LeBlanc, Secretary of the Louisiana Department of Corrections, individually and acting in his official capacity;

(3) false arrest and false imprisonment pursuant to 42 U.S.C. § 1983 as to defendants Brian Blache and Sid Gautreaux, East Baton Rouge Sheriff, in his official capacity;

(4) excessive use of force in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 as to Chasity Sanford;

(5) entity liability/official liability under 42 U.S.C. § 1983 as to Charles Mondrick, interim chief of the Baton Rouge Police Department, in his official capacity; James M. LeBlanc, Secretary of the Louisiana Department of Corrections, individually and acting in his official capacity; and Sid Gautreaux, East Baton Rouge Sheriff, in his official capacity;

(6) negligent hiring, training, supervision and retention, in violation of La.C.C. art. 2315 as to Charles Mondrick, in his official capacity; James M. LeBlanc, individually and in his official capacity; and Sid Gautreaux, in his official capacity;

(7) negligence, in violation of La.C.C. art. 2315 as to Heath Soileau; and

(8) battery, in violation of La.C.C. art. 2315 as to Chasity Sanford.

Reed sued for $600,000 in compensatory damages and $5,000,000 in punitive damages, as well as attorney's fees.

The defendants now seek dismissal of the plaintiff's claims; they assert many grounds, including that Reed's Section 1983 claims have prescribed.[6]

---

[6]On January 11, 2012 this Court ordered supplemental papers addressing the statute of limitations issue, and also granted the defendants' motion to dismiss the plaintiff's claims against James L. LeBlanc in his official capacity; the plaintiff conceded that the Court lacked subject matter jurisdiction over these claims on the ground of sovereign immunity.

Case 3:11-cv-00030-MLCF-DEK  Document 73  02/09/12  Page 10 of 16

Although 42 U.S.C. § 1983 provides a federal cause of action, Congress did not adopt an accompanying federal statute of limitations. Accordingly, it is well-settled that the federal courts borrow from the forum state's personal injury limitations period. Wallace v. Kato, 549 U.S. 384, 387 (2007). As a result, the Fifth Circuit has approved application of Louisiana's one-year personal injury prescriptive period, as provided by La.C.C. art. 3492, for Section 1983 actions. See Elzy v. Roberson, 868 F.2d 793, 794-95 (5th Cir. 1989); Gaspard v. United States, 713 F.2d 1097, 1102 n.11 (5th Cir. 1983).

Unlike the limitations period itself, the accrual date of a Section 1983 claim is governed by federal law. Wallace, 549 U.S. at 388. Generally, a Section 1983 action will accrue when a plaintiff knows or has reason to know of the injury that is the basis of the complaint. Lavelle v. Listi, 611 F.2d 1129, 1131 (5th Cir. 1980). In particular, when false arrest or false imprisonment claims are asserted, the limitations period will accrue when the claimant "becomes held pursuant to [legal] process--when, for example [s]he is bound over by a magistrate or arraigned on charges." See Wallace, 549 U.S. at 389-91 (holding that "the statute of limitations upon a Section 1983 claim seeking damages for false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the

time the claimant becomes detained pursuant to legal process", not at the time that a conviction arising out of the arrest is reversed).[7]

## II.
### *A.*

Reed's false arrest and false imprisonment claims against defendants Detective Blache, Sheriff Gautreaux, Officer Edwards, Police Chief Mondrick, Secretary of the Louisiana Department of Public Safety and Corrections James LeBlanc, and Probation and Parole Officer Heath Soileau fall squarely within the holding of <u>Wallace</u>, and must be dismissed as time-barred. Likewise, her excessive force claim against Deputy Sanford is time-barred.

---

[7]The Supreme Court has observed:

> False arrest and false imprisonment overlap; the former is a species of the latter.... We shall thus refer to the two torts together as false imprisonment.... The sort of unlawful detention remediable by the tort of false imprisonment is detention without legal process...and the allegations before us arise from respondents' detention of petitioner without legal process.... They did not have a warrant for his arrest.... Thus, to determine the beginning of the limitations period in this case, we must determine when petitioner's false imprisonment came to an end.... Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process–when, for example, he is bound over by a magistrate or arraigned on charges.... If there is a false arrest claim, damages for that claim cover the time of detention up until the issuance of process or arraignment, but not more.

<u>Id.</u> at 390.

12

Reed alleges the following facts relevant to the prescription issues raised by the defendants:

- When Reed did not appear on November 19, 2007 for the revocation hearing related to her probation, an arrest warrant was signed by the judge in the 23rd Judicial District Court, and the matter was continued without date.
- Reed was stopped by Officer Edwards on February 28, 2009 and a warrant issued as a result.
- Detective Blache executed an arrest warrant for her on March 18, 2009 "on theft charges related to her employment with...CTV and Associates".
- Reed was arrested on July 21, 2009 during a warrant roundup pursuant to the Traffic Warrant, the CTV Warrant, and the Probation Warrant.
- On July 23, 2009, Probation Officer Soileau files an additional motion and order to revoke probation (as a result of the Traffic Warrant and CTV Warrant, as well as a charge for issuing worthless checks), and also requests a probation hold with the East Baton Rouge Parish Jail.
- Sometime between August 1, 2009 and August 15, 2009, Reed posted a bond, with a surety, in the amount of $35,000 to cover the charges related to the traffic stop and the alleged theft to facilitate her release from East Baton Rouge Parish Jail.
- Reed was then transported to Ascension Parish Jail and held there on the Probation Warrant.
- On September 22, 2009 Reed's attorney appears at the revocation hearing set in the 23rd Judicial District Court and requests a continuance; the revocation hearing is continued until November 17, 2009, at which time the State secured a continuance.[8]
- On November 26, 2009 Deputy Sanford allegedly assaulted Reed during medicine call.
- On January 19, 2010 Reed was present with her attorney for the revocation hearing; the State again moved for a continuance because Soileau was not present; the court granted the continuance but ordered that the probation hold be lifted and that Reed be released.
- On January 18, 2011 Reed filed this lawsuit.

Reed's false arrest claims accrued at the time she became

_____

[8]Reed claims that she had fired the lawyer before he requested the continuance on her behalf.

13

detained "pursuant to legal process". The defendants respond that Reed became detained pursuant to legal process when she posted bond on the theft and traffic charges, which according to the allegations of her complaint was -- at the latest -- August 15, 2009. In light of the one-year prescriptive period, her false arrest claims expired one year later on August 15, 2010. Because she did not file this lawsuit until January 18, 2011, her false arrest claims against Detective Blache, Sheriff Gautreaux, Officer Edwards, Police Chief Mondrick, Secretary of the Louisiana Department of Public Safety and Corrections James LeBlanc, and Probation and Parole Officer Heath Soileau are dismissed as time-barred.[9]

*B.*

Reed's excessive force claims against Deputy Sanford and Sheriff Gautreaux meet the same fate. The Court again borrows the

---

[9]Defendants LeBlanc and Soileau contend, in the alternative, that Reed's claims against them prescribed, if not on August 15, 2010, then on September 22, 2010, which was one year after Reed's September 22, 2009 appearance at the revocation hearing about the Probation Warrant. The Court agrees. Even if Reed could somehow suggest that her false arrest claims against Soileau and LeBlanc did not accrue until she appeared for a revocation hearing (the appearance for a hearing being the requisite legal process) there were several hearings (in which she was represented by counsel) that would appear to satisfy <u>Wallace</u>'s mandate that the limitations period will accrue when the false imprisonment ends; when the claimant "becomes held pursuant to [legal] process." The first of several revocation hearings, although ultimately continued, was held on September 22, 2009. Reed insists, however, that the only hearing date that matters for accrual purposes, even though it was also continued, was the one held on January 19, 2010. She offers no support for her assertion.

14

same one-year prescriptive period from Louisiana. Reed's Section 1983 action based on an excessive force claim accrued when she knew or had reason to know of the injury that is the basis of her lawsuit. See Lavelle v. Listi, 611 F.2d 1129, 1131 (5th Cir. 1980). Reed knew or should have known of the basis of her excessive force claim when she was allegedly assaulted by Deputy Sanford, which Reed says occurred on November 26, 2009. Because Reed filed this lawsuit more than one year later on January 18, 2011, her excessive force claim is also time-barred.

*C.*

A district court may decline to exercise supplemental jurisdiction over pendent state law claims if the Court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). Indeed, when a district court dismisses all federal claims before trial, the general rule is to dismiss any pendent state law claims. See Bass v. Parkwood Hosp., 180 F.3d 234, 246 (5th Cir. 1999)(citation omitted). Because all of the plaintiff's charges forming the basis of her Section 1983 claims have prescribed, the Court declines to exercise supplemental jurisdiction over any state law claims that might remain.

IT IS ORDERED: that the defendants' three motions to dismiss -- (1) defendants Sid Gautreaux, Brian Blache, and Chasity Sanford's motion to dismiss; (2) defendants James M. LeBlanc and Heath Soileau's motion to dismiss plaintiff's complaint; and (3)

defendants Michael Edwards and Charles Mondrick's Rule 12(b)(6)
motion to dismiss on the basis of prescription are GRANTED insofar
as they seek to dismiss Reed's Section 1983 claims on the grounds
of prescription; accordingly, the plaintiff's Section 1983 claims
are dismissed with prejudice,[10] and any state law claims are
dismissed without prejudice.

New Orleans, Louisiana, February 9, 2012

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[10]The plaintiff purports to assert a claim for "entity
liability/official liability" against defendants Mondrick,
LeBlanc, and Gautreaux. However, because Reed cannot state an
underlying constitutional claim against any of the defendants, to
the extent that she seeks to assert any official capacity claim
against these defendants or any "entity", such claims are
properly also dismissed. See Patin v. Richard, No. 10-650, 2011
WL 9118, at *7-8 (W.D. La. Jan. 3, 2011)(citations omitted).

16

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

**CV 12-0558-JJB-SCR**
**APPENDIX 2**

September 18, 2012

Mr. Nick Lorio
U.S. District Court, Middle District of Louisiana
777 Florida Street
Baton Rouge, LA 70801

        No. 12-30196,  Marie Reed v. Mike Edwards, et al
            USDC No. 3:11-CV-30

Enclosed, for the district court only, is a copy of the judgment
issued as the mandate.

Enclosed, for the district court only, is a copy of the court's
opinion.

Enclosed for the district court and counsel is the approved bill
of costs.

The electronic copy of the record has been recycled.


                    Sincerely,

                    LYLE W. CAYCE, Clerk


                    By:_____
                    Shawn D. Henderson, Deputy Clerk
                    504-310-7668

cc: (letter only)
        Honorable Martin L.C. Feldman

cc w/encl:
        Mr. Jarrett P. Ambeau
        Mr. James Leslie Hilburn
        Ms. Lindsay Leigh Lollar
        Mr. Paul H. Scott
        Mr. Edmond Wade Shows
        Mr. Robert Lawrence Sirianni Jr.
        Ms. Catherine Susan St Pierre

P.S. to Judge Feldman:  A copy of the opinion was sent to your
office via email the day it was filed.

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 27, 2012

Lyle W. Cayce
Clerk

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 12-30196
Summary Calendar

D.C. Docket No. 3:11-CV-30

MARIE REED,

      Plaintiff - Appellant

v.

MIKE EDWARDS, Officer of the Baton Rouge Police Department; CHARLES MONDRICK, Interim Chief of the Baton Rouge Police Department; HEATH SOILEAU, Officer of the Probation and Parole Officer of East Baton Rouge Parish; JAMES M. LEBLANC, Secretary of the Louisiana Department of Corrections; BRIAN BLACHE, Detective of East Baton Rouge Parish Sheriff's Office; SID GAUTREAUX, East Baton Rouge Parish Sheriff; CHASITY SANFORD, Deputy of the East Baton Rouge Parish Sheriff's Office,

      Defendants - Appellees

Appeal from the United States District Court for the
Middle District of Louisiana, Baton Rouge

Before REAVLEY, SMITH and PRADO, Circuit Judges.

## J U D G M E N T

    This cause was considered on the record on appeal and the briefs on file.

    It is ordered and adjudged that the judgment of the District Court is affirmed.

    IT IS FURTHER ORDERED that plaintiff-appellant pay to defendants-appellees the costs on appeal to be taxed by the Clerk of this Court.

ISSUED AS MANDATE:   SEP 1 8 2012

**A True Copy**
**Attest**

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
             **Deputy**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

# FILED

August 27, 2012

Lyle W. Cayce
Clerk

———————

No. 12-30196
Summary Calendar

———————

MARIE REED,

                                         Plaintiff-Appellant,

versus

MIKE EDWARDS, Officer of the Baton Rouge Police Department;
CHARLES MONDRICK,
Interim Chief of the Baton Rouge Police Department;
HEATH SOILEAU,
Officer of the Probation and Parole Officer of East Baton Rouge Parish;
JAMES M. LEBLANC, Secretary of the Louisiana Department of Corrections;
BRIAN BLACHE, Detective of East Baton Rouge Parish Sheriff's Office;
SID GAUTREAUX, East Baton Rouge Parish Sheriff;
CHASITY SANFORD,
Deputy of the East Baton Rouge Parish Sheriff's Office,

                                         Defendants-Appellees.

———————————

Appeal from the United States District Court
for the Middle District of Louisiana
No. 3:11-CV-30

———————————

No. 12-30196

Before REAVLEY, SMITH, and PRADO, Circuit Judges.

PER CURIAM:[*]

## I.

Marie Reed asserted false-arrest and false-imprisonment claims under 42 U.S.C. § 1983 and various state-law claims. She alleged that the defendants, who are law enforcement and probation officers, conspired to bring false charges against her, which resulted in her arrest and extended imprisonment. Defendants moved to dismiss for failure to state a claim, arguing that Reed's claims were time-barred. The district court determined that the false-arrest and imprisonment claims accrued at her bond hearing, which was no later than August 15, 2009; the one-year statute of limitations rendered her January 2011 filing untimely. The court dismissed Reed's federal claims with prejudice and declined to exercise jurisdiction over the supplemental state-law claims. Reed appeals.

## II.

Reed contends that her Fourth Amendment claim for unlawful seizure was not time-barred, because although the limitations period is governed by state law, *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 814 n.7 (5th Cir. 2010), the accrual date is governed by federal law, which dictates that a § 1983 claim accrues when a "plaintiff knows or has reason to know of the injury which is the basis of the action,." *Lavellee v. Listi*, 611 F.2d 1129, 1130-31 (5th Cir. 1980)

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Case 3:11-cv-00030-MLCF-DEK   Document 83   09/21/12   Page 4 of 8

(internal citations and quotations omitted). For false-arrest and false-imprison-ment claims, the limitations period accrues when the plaintiff "becomes held pursuant to [legal] process—when, for example, [s]he is bound over by a magis-trate or arraigned on charges." *Wallace v. Kato*, 549 U.S. 384, 389-90 (2007) (emphasis omitted). Although the district court found that Reed was detained pursuant to legal process at her bond hearing, she asserts that that hearing did not constitute "legal process," because the record does not reveal whether the hearing included a determination of the legality of her detention. Reed instead asks to file an amended complaint adding further details about the bond hearing and whether it constituted legal process.

Our caselaw indirectly addresses this issue and suggests that a bond hear-ing constitutes legal process under *Wallace*. In *Terry v. Hubert*, 609 F.3d 757, 763 (5th Cir. 2010), we held that a warden who was sued under § 1983 "could reasonably have concluded that [the plaintiff's] detention was pursuant to pro-cess," because the plaintiff was "afforded a bond hearing on his charges." Reed argues that *Hubert* is not controlling, because the issue there pertained to an inquiry regarding whether the warden had violated clearly established law and not to the *Wallace* legal-process requirement.

Instead, Reed points to *Mondragon v. Thompson*, 519 F.3d 1078 (10th Cir. 2008), to suggest that a bond hearing does not constitute legal process. The plaintiff in that case alleged that he appeared at "some sort of hearing" but con-tended that it did not constitute legal process, because the record did not indi-cate what kind of hearing it was. *Id.* at 1081. Because the arrest warrant was forged and there was no information regarding what kind of hearing the plaintiff received, the court expressed doubt that the plaintiff had received legal process

3

within the meaning of *Wallace*, so it remanded for the district court to make the determination. *Id.* at 1083-84. The court noted, however, that the *Wallace* requirement would have been satisfied if the arrest warrant had not been forged or if there were more information surrounding the plaintiff's hearing. *Id.*

Reed appeared at a bond hearing and posted bond no later than August 2009. Because she appeared before a judge, acknowledged the claims against her, and posted bail, we can ascertain the kind of hearing she received. We conclude that a bond hearing satisfies the definition of legal process within the meaning of *Wallace*, so we need not remand to allow Reed to amend.

Even if the bond hearing did not meet the legal-process requirement of *Wallace*, Reed attended several later revocation hearings that constituted legal process. The first, in which Reed was represented by counsel, was held in September 2009, so Reed's claims expired, at the latest, in September 2010. Because she did not sue until January 2011, her Fourth Amendment claims are time-barred, even using the later accrual date.[1]

## III.

Reed alternatively argues that, even if her Fourth Amendment claim is time-barred, she can state a viable claim under the Due Process Clause if permitted to amend. Although Federal Rule of Civil Procedure 15(a) "declares that leave to amend 'shall be freely given when justice so requires,'" *Foman v. Davis*, 371 U.S. 178, 182 (1962), Reed never asked the district court for leave to amend

---

[1] Despite the bond hearing and the subsequent revocation hearings, Reed insists that the only hearing this court should consider for accrual purposes is the one held in January 2010. Reed has offered no support for that assertion, and we see no reason to consider the bond hearing or the September revocation hearing insufficient under *Wallace*.

Case 3:11-cv-00030-MLCF-DEK   Document 83   09/21/12   Page 6 of 8

or sought to raise a due process claim during the more than one year that suit was pending. Therefore, the court did not deprive her of an opportunity to amend.

Reed also claims that, even though she failed to raise a due-process claim in her initial pleading or to move to amend, justice requires that this court permit her to raise a due-process claim. As a general rule, "[a] party cannot raise a new theory on appeal that was not presented to the court below," *Capps v. Humble Oil & Refining Co.*, 536 F.2d 80, 82 (5th Cir. 1976), but Reed contends that these are "exceptional circumstances" that allow an appellate court to hear an issue for the first time on appeal if "no further factual development is required and a miscarriage of justice would otherwise result," *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1144-45 (5th Cir. Unit A Sept. 1981).

There is no miscarriage of justice. First, it is not certain that Reed would have succeeded on this theory if she had raised it in district court. *See id.* at 1146 (declining to consider a new theory on appeal, because it was not certain that the appellant would have prevailed on that theory in the lower court). Second, the due-process claim that Reed wishes to raise is not a pure question of law but instead would require further factual findings regarding Reed's arrest and imprisonment to determine whether they in fact violated due process. Reed has presented only conclusional allegations that her arrest was concocted through a conspiracy, so no miscarriage of justice would result from following our general rule and refusing to hear her new claim.

AFFIRMED.

Case 3:11-cv-00030-MLCF-DEK   Document 83   09/21/12   Page 7 of 8